**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MISSOURI**
**EASTERN DIVISION**

| | |
|---|---|
| BCTH, by and through next friend, KIMBERLY HAHN,<br><br>Plaintiff,<br><br>v.<br><br>FRANK BISIGNANO,[1]<br>Commissioner of Social Security,<br><br>Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  No. 4:25-cv-00461-JAR<br>)<br>)<br>)<br>)<br>)<br>) |

**MEMORANDUM AND ORDER**

This action is before the Court for judicial review of the Commissioner of Social Security's final decision that found minor Plaintiff BCTH was not disabled, and thus, not entitled to child's supplemental security income ("SSI") under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381*, et seq*. For the reasons below, the decision of the Commissioner will be affirmed.

**BACKGROUND**

The Court adopts the statement of facts set forth in Plaintiff's Statement of Uncontroverted Facts (ECF No. 18), which Defendant admitted (ECF No. 21-1) with certain additional clarifications not contested in Plaintiff's reply (ECF No. 22).  The Court has reviewed the transcript, and the statement of facts generally aligns with it.  Specific facts are discussed below as needed to address the parties' arguments.

---

[1]    Frank Bisignano became the Acting Commissioner of Social Security on May 6, 2025. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Frank Bisignano should be substituted for Leland Dudek as the defendant in this suit. No further action need be taken to continue this suit by reason of the last sentence of section 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

On November 7, 2022, Kimberly Hahn ("Ms. Hahn") protectively applied for SSI on behalf of her son, minor Plaintiff BCTH ("Plaintiff"), who was born on January 15, 2016. Tr. 14-15. Plaintiff was age 6 at the time the application was filed on his behalf, and he alleged disability beginning on June 9, 2022. *Id*. After the Social Security Administration denied Plaintiff's claim on June 27, 2023, Plaintiff submitted a request for a hearing before an administrative law judge ("ALJ") on July 17, 2023. Tr. 97. The hearing was held on January 3, 2024 by telephone, during which Plaintiff was represented by counsel, and Ms. Hahn testified. Tr. 48. By a decision dated March 27, 2024, the ALJ found that Plaintiff suffers from the severe impairments of attention-deficit hyperactivity disorder ("ADHD"), oppositional defiant disorder ("ODD"), and anxiety disorder.[2] Tr. 15, 21. However, the ALJ upheld the denial of benefits, finding that Plaintiff was not disabled because Plaintiff's impairments did not meet, medically equal, or functionally equal the severity of the listings in 20 C.F.R. Part 404, Subpart P, Appendix 1. Tr. 15-17. In particular, he concluded that Plaintiff's impairments did not functionally equal any listing because he suffered no "extreme" limitations in any of the six domains of functioning and a "marked" limitation in only one domain. Tr. 18. Plaintiff's request for a review of the ALJ's decision to the Appeals Council was denied on February 4, 2025. Tr. 1. As a result, the ALJ's decision stands as the final decision of the Commissioner. *See Sims v. Apfel*, 530 U.S. 103, 107 (2000).

---

[2] The ALJ's decision states that Plaintiff also suffered from the severe impairment of obsessive compulsive disorder ("OCD"). However, the medical and observational records contained in the record, including those specifically cited by the ALJ in support of the noted diagnoses, do not reflect that Plaintiff has ever been diagnosed with OCD. Because none of the ALJ's findings were specific to or reliant on a diagnosis of OCD, and neither party has raised any issue with respect to that conclusion, the Court will disregard the error as harmless.

Having exhausted all administrative remedies, Plaintiff filed the present action for judicial review on April 7, 2025 and submitted his brief on September 29, 2025.  Plaintiff argues that the ALJ's findings are contrary to the record and internally inconsistent.  Specifically, Plaintiff contends that while the ALJ found the opinion of Plaintiff's first grade teacher, Nora Ryan ("Ms. Ryan"), to be "persuasive," the ALJ failed to give Ms. Ryan's conclusions sufficient weight and came to conclusions contrary to Ms. Ryan's observations, which Plaintiff believes would support a finding of marked limitations in four functional domains.

Ms. Ryan filled out a teacher questionnaire on January 26, 2023 detailing her observations of Plaintiff in activities associated with the six functional domains.  Tr. 217-226.  In addition to providing written comments, Ms. Ryan was asked to select check boxes associated with the level of difficulty Plaintiff faced engaging in a list of key activities associated with each functional domain.  *Id*.  The check boxes range from "no problem" with the activity (a 1 out of 5) to "a very serious problem" with the activity (a 5 out of 5).  *Id*.  The teacher questionnaire indicated that Plaintiff's capability to perform key activities ranged from no problems to serious problems in the domains of acquiring and using information, attending and completing tasks, interacting and relating with others, and caring for oneself.[3]  *Id*.

The ALJ noted in his decision that he found Ms. Ryan's opinion to be "persuasive."  Tr. 21.  He stated the following regarding his assessment of the teacher questionnaire:

> Ms. Ryan opines that the claimant has obvious – very serious problems acquiring and using information, interacting with and relating to others, and carrying [sic] for himself; and obvious problems attending to and completing tasks. (Ex. 4E). This opinion

---

[3] Notably, while the ALJ's written decision (and Plaintiff's brief) stated that Ms. Ryan had checked boxes indicating issues from "obvious" to "very serious" in these four domains, this conclusion contained a scrivener's error.  Ms. Ryan did not indicate any "very serious" (5 out of 5) problems in any domain.  Her responses ranged from "no problem" (1 out of 5) to "serious" problems (4 out of 5) in each rated activity, as explained more fully below.

3

> is supported by Ms. Ryan's observations that the claimant refuses to complete assignments, has difficulty transitioning between activities, and shuts down when he is frustrated. (Ex. 4E). It is also consistent with the overall record, which reflects that the claimant is not open to redirection. (Ex. 5F, Page 5).

*Id.* Nevertheless, the ALJ concluded on review of the entire record, which included a multitude of other opinions and records, that Plaintiff suffered a marked limitation only in the domain of attending and completing tasks and less than marked limitations in the domains of: (1) acquiring and using information, (2) interacting and relating with others, and (3) caring for himself.  Tr. 18. Plaintiff now contends that the ALJ's conclusions as to the latter three domains were not supported by substantial evidence and are internally inconsistent, as they do not align with the teacher questionnaire that the ALJ found persuasive.

## STANDARD OF REVIEW

In reviewing a final decision denying benefits, the Court must determine "whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusion."  *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006) (quotations omitted).  "[T]he threshold for such evidentiary sufficiency is not high.  Substantial evidence . . . is more than a mere scintilla."  *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019) (quotations omitted).  "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.*

A reviewing court "must consider evidence that both supports and detracts from the ALJ's decision.  If, after review, [the court finds] it possible to draw two inconsistent positions from the evidence and one of those positions represents the Commissioner's findings, [the court] must affirm the decision of the Commissioner."  *Chaney v. Colvin*, 812 F.3d 672, 676 (8th Cir.

2016) (quotations omitted).  Put another way, a court should "disturb the ALJ's decision only if it falls outside the available zone of choice."  *Papesh v. Colvin*, 786 F.3d 1126, 1131 (8th Cir. 2015) (citation omitted).  A decision does not fall outside that zone simply because the reviewing court might have reached a different conclusion had it been the finder of fact in the first instance. *Id*.

## DISCUSSION

In order to qualify for SSI benefits, a child under the age of 18 must show that they have a medically determinable physical or mental impairment resulting in "marked and severe functional limitations," which can be expected to result in death or which have lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 1382c(a)(3)(C)(i).  The Commissioner's regulations set out a three-step sequential evaluation process to determine whether a child's impairment or a combination of impairments results in marked and severe functional limitations.  *See* 20 C.F.R. § 416.924(a); 20 C.F.R. pt. 404, Subpt. P, App. 1 Pt. B; *Walker v. Apfel*, 141 F.3d 852, 854 (8th Cir. 1998).  The Commissioner begins by deciding whether the child is engaged in substantial gainful activity.  If so, benefits are denied.  If not, at step two, the child's impairment is evaluated to determine whether it is severe.  If the child's impairment is not severe, there is no disability.  If the impairment is severe, at step three the ALJ compares the impairment to the childhood listings in 20 C.F.R., Part 404, Subpart P, Appendix 1.  If the child's impairment meets, medically equals, or functionally equals a listed impairment, the child is disabled.  20 C.F.R. § 416.924(d).  In this case, the ALJ determined that Plaintiff was not engaged in substantial gainful activity and did suffer from severe impairments. Step three is at issue here, in which the ALJ determined that none of Plaintiff's impairments functionally equaled a listed impairment.

Functional equivalence is determined by assessing a child's potential limitations in six domains: (1) acquiring and using information, (2) attending and completing tasks, (3) interacting and relating with others, (4) moving about and manipulating objects, (5) caring for self, and (6) health and physical wellbeing.  20 C.F.R. § 416.926a(b)(1).  A child's impairment is functionally equivalent to a listed impairment if the child possesses an "extreme" limitation in one of the six functional domains or if the child possesses a "marked" limitation in at least two of the domains.  20 C.F.R. § 416.926a(a); *Hudson v. Barnhart*, 345 F.3d 661, 665 (8th Cir. 2003).  In evaluating the child's functioning in each domain, the ALJ should consider "how appropriately, effectively, and independently [the child] perform[s] [his] activities compared to the performance of other children [his] age who do not have impairments."  20 C.F.R. § 416.926a(b).  A marked limitation is one that "interferes seriously" with the child's ability to independently initiate, sustain, or complete domain-related activities; an extreme limitation is one that "interferes very seriously" with these abilities.  20 C.F.R. § 416.926a(e)(2),(3).

The ALJ found, and Plaintiff does not dispute, that Plaintiff experiences a marked limitation in the domain of attending and completing tasks, which is supported by the record evidence demonstrating the difficulty Plaintiff's caregivers and providers have faced in convincing him to engage with assigned work, non-preferred tasks, and transitions from one task to another.  Plaintiff also agrees with the ALJ that he experiences no limitation in the domain of health and physical wellbeing and in the domain of moving about and manipulating objects.  At issue are the three domains in which the ALJ found that Plaintiff experiences less than marked limitations: (1) acquiring and using information, (2) interacting and relating with others, and (3) the ability to care for himself.  Plaintiff contends that he suffers at least marked limitations in each of these areas and that the teacher questionnaire supports this.

6

A. <u>Teacher Questionnaire</u>

In considering a child's functionality in the six domains, an ALJ is tasked with reviewing the entire record, which can include a multitude of evidence from both medical and non-medical sources, including opinions from medical providers and agency physicians; medical, psychological, and educational test results; educational records; and statements from parents, caregivers, teachers, and other school personnel who regularly observe the child. 20 CFR 416.924a(a). Here, Ms. Ryan's teacher questionnaire was undoubtedly a source the ALJ could, and did, consider. Plaintiff argues that the ALJ's decision is internally inconsistent because the ALJ lauded Ms. Ryan's observations as "persuasive" but departed from her conclusions in three functional domains. It is true that the ALJ's decision does characterize the teacher questionnaire as persuasive. *See* Tr. 21. However, as the Commissioner points out, the ALJ relied on more than just the teacher questionnaire in arriving at his conclusions.

As an initial matter, "persuasive" does not mean dispositive. An ALJ's finding that a particular opinion was persuasive does not require the ALJ to adopt the conclusions drawn therein in their entirety or recite the observed limitations word-for-word. *See Wyatt v. Kijakazi*, No. 23-1559, 2023 U.S. App. LEXIS 27049, at *1-2 (8th Cir. Oct. 12, 2023) (per curiam) (holding that an ALJ is "not required to adopt the exact limitations set forth in the opinions she found persuasive" so long as substantial evidence supports the ALJ's findings). The key inquiry is whether each of the ALJ's conclusions is supported by substantial evidence. This includes consideration of all persuasive opinions and sources, which may not always align with each other.

An ALJ is required to review all available evidence wholistically. "[W]hat a record would indicate if viewed in isolation is of little relevance to the disability inquiry. The disability

determination requires consideration of 'all relevant evidence,' not consideration of specific pieces of evidence in isolation." *King v. Astrue*, No. 4:11-CV-1923-SPM, 2013 U.S. Dist. LEXIS 28295, at *28 (E.D. Mo. Mar. 1, 2013) (20 C.F.R. § 416.924(a)) (rejecting child claimant's argument that the ALJ should have concluded that the claimant suffered marked limitations in a certain domain by reviewing a teacher questionnaire in isolation).

By insisting that the ALJ's purportedly unexplained departure from Ms. Ryan's persuasive opinion necessitates remand, Plaintiff seems to invoke the standard of review applicable to the ALJ's assessment of medical opinions.  In the context of medical opinions, an ALJ generally must explain why they departed from any functional limitations found in a medical opinion the ALJ found persuasive.  *See French v. Bisignano*, No. 8:24CV77, 2025 U.S. Dist. LEXIS 192561, at *27-30 (D. Neb. Sept. 30, 2025) (collecting cases from the Eighth Circuit in which "courts have frequently found remand required where an ALJ finds a medical opinion persuasive, yet declines to include some of the limitations found in that opinion in that RFC and does not explain why").  This standard arises from the regulation governing the ALJ's consideration of medical opinions, which requires that the ALJ make a host of specific findings about any reviewed medical opinions or prior administrative medical findings.  20 CFR § 404.1520c.  These same requirements do not apply to the ALJ's review of nonmedical opinions like the teacher questionnaire.  The ALJ is "not required to articulate how [he] considered evidence from nonmedical sources" using the same criteria.  *Id*.  While Ms. Ryan's opinions in the teacher questionnaire were persuasive, the ALJ was permitted to depart from some of her conclusions.  While the ALJ's decision is consistent with much of Ms. Ryan's questionnaire, the ALJ's conclusions that depart from Ms. Ryan's are still supported by substantial evidence for the reasons explained below.

B.  Domain of Acquiring and Using Information

The domain of acquiring and using information generally requires assessment of a school-age child's ability to engage in basic school subjects, learn, and apply acquired skills to real situations.  20 CFR § 416.926a(g)(2)(iv).  Examples of limited functioning in this domain include difficulties understanding words about space, size, or time; difficulty recalling things learned in school; difficulty solving math questions; and speaking in simple sentences with difficulty explaining meaning.  20 CFR § 416.926a(g).

In the domain of acquiring and using information, Plaintiff contends that the ALJ's opinion departed from Ms. Ryan's conclusions.  However, a closer analysis of Ms. Ryan's assessment of this domain reveals its consistency with the ALJ's conclusion that Plaintiff experienced less than marked limitations.  Ms. Ryan noted that Plaintiff experienced only a "slight problem" completing eight out of the ten activities listed in this domain.  Tr. 220.  With respect to the remaining two activities in this domain, Ms. Ryan noted that Plaintiff experienced an "obvious problem" with one (reading and comprehending written material) and a "serious problem" with the other (expressing ideas in written form).  *Id*.  While relevant, and considered by the ALJ, Ms. Ryan's assessment was not contrary to the conclusion that Plaintiff experienced less than marked limitations in this domain, as his teacher observed only slight difficulties with the majority of tasks in this area.

Further support for the ALJ's conclusion in this domain is also found elsewhere in the record, as recounted in the ALJ's written decision.  The ALJ cited Plaintiff's medical records reflecting that Plaintiff demonstrated average intellectual functioning, normal memory, and a normal fund of knowledge.  Tr. 19.  Further, the ALJ found persuasive the prior administrative medical findings of Dr. Raphael Smith and Dr. Margaret Sullivan, who assessed Plaintiff's

9

mental and psychological functioning at the initial and reconsideration level, respectively. Tr. 20. Drs. Smith and Sullivan agreed that Plaintiff experienced less than marked limitations in acquiring and using information. *Id.*; see also Tr. 70, 76. Dr. Smith's and Dr. Sullivan's opinions included an analysis of the teacher questionnaire and noted, among other observations, that Plaintiff was found to be on grade level as of October 2022, and as of April 2023, his mother had reported that he was doing well in school. As such, there is substantial evidence supporting the ALJ's conclusion as to Plaintiff's functional equivalence in this domain.

C. Domain of Interacting and Relating with Others

The domain of interacting and relating with others generally requires assessment of a school-age child's ability to develop lasting friendships with children of the same age, work in groups, understand another's point of view, tolerate differences, engage with a variety of people, and speak in a manner that both familiar and unfamiliar listeners understand. 20 CFR § 416.926a(i)(2)(iv). Examples of limited functioning in this area include having no close friends who are the same age; avoidance of or withdrawal from other people; avoidance or fear of new experiences; difficulty playing games or sports with rules; and difficulty communicating, speaking intelligibly, or expressing oneself. 20 CFR § 416.926a(i)(3).

The Court acknowledges that there are indications in the record that Plaintiff struggles to appropriately interact and relate with others, some of which were noted in the ALJ's decision. For example, the ALJ noted that Plaintiff had at times presented for psychological evaluation with an anxious and agitated mood and a defiant affect, was uncooperative, and at times demonstrated poor eye contact. Tr. 19. Ms. Ryan also noted the most significant problems in this domain in her teacher questionnaire. She reported that Plaintiff experienced "obvious" or "serious" problems engaging in half of the exemplary activities in this domain and that each of

10

these problems occurred daily.  Tr. 222.  She noted that Plaintiff had "serious" problems with "seeking attention appropriately," "expressing anger appropriately," "asking permission appropriately," "respecting/obeying adults in authority," and "interpreting meaning of facial expression, body language, hints, and sarcasm."  *Id*.  Ms. Ryan also noted that Plaintiff had "obvious" problems with "making and keeping friends," "following rules," and "relating experiences and telling stories."  *Id*.

Despite these noted difficulties, the record also demonstrates Plaintiff's capability to conduct appropriate interactions and relations with other individuals.  Ms. Ryan noted in her questionnaire that Plaintiff was becoming more social as the year progressed and that he had been working with a staff member assigned to help him navigate social settings.  Tr. 222-23.  In her assessment of key activities in this domain, she observed that Plaintiff experienced only "slight" problems "playing cooperatively with other children," "using language appropriate to the situation and listener," "introducing and maintaining relevant and appropriate topics of conversation," "taking turns in a conversation," and "using adequate vocabulary and grammar to express thoughts/ideas in general, everyday conversation."  Tr. 222.  As the ALJ noted, Plaintiff's medical records also contained examples of Plaintiff's normal mood and affect when presenting for psychological evaluation and fair eye contact.  Tr. 19.  The ALJ also found that despite the fact that Plaintiff was at times uncooperative, his medical records more frequently reflected cooperation with his treating providers.  *Id*.  The ALJ also relied on the conclusions of Drs. Smith and Sullivan, who opined that Plaintiff experienced less than marked limitations in this domain.  Tr. 20.  In their assessments, they cited record evidence demonstrating that Plaintiff's behavioral issues at school were alleviated by medication and that Plaintiff's mother reported that Plaintiff had lots of friends.  Tr. at 70, 77; *see also id*. at 380, 382, 634, and 696 (noting

11

Plaintiff's friendships and normal interactions with peers), *id*. at 368, 362, 371, 391, 397, 416, 626, 628, 646, 652, 655, 658, 687, 742, 875, 881, 884, 891 (noting that Plaintiff's behavior in school was indeed better especially after establishing an effective medication regimen).

While there exists some conflict among the evidence considered by the ALJ, the Court is not tasked with reweighing the evidence.  It matters not whether, on balance, the Court could have come to a different conclusion regarding Plaintiff's limitations in the domain of interacting with others, as there exists substantial evidence supporting the ALJ's conclusion that Plaintiff experienced less than marked limitations in this domain.  The Eighth Circuit has described a reviewing court's limited role as follows:

> As long as there is substantial evidence on the record as a whole to support the Commissioner's decision, we may not reverse it because substantial evidence exists in the record that would have supported a contrary outcome, or because we would have decided the case differently.

*Hutsell v. Massanari*, 259 F.3d 707, 711 (8th Cir. 2001) (internal citations omitted).  Because there exists substantial evidence in the record to support the ALJ's conclusions, the Court will uphold the ALJ's assessment in the domain of interacting and relating with others.

D.  Domain of Caring for Oneself

The domain of caring for oneself generally requires assessment of a school-age child's ability to independently carry out most day-to-day activities like dressing and bathing, identify personal competence in daily tasks, identify personal feelings, understand right and wrong and appropriate behavior, consistently control one's own behavior, and avoid unsafe behaviors.  20 CFR § 416.926a(k)(2)(iv).  Examples of limited function in this domain include inability to dress or bathe oneself, self-injurious behavior, ignoring safety rules, not spontaneously engaging in enjoyable activities, and disturbances in eating or sleeping patterns.  20 CFR § 416.926a(k)(3).

12

In this domain too, Plaintiff argues that the ALJ's conclusion of less than marked limitation is inconsistent with the teacher questionnaire.  In this domain, Ms. Ryan's conclusions were mixed, indicating few or no problems with Plaintiff's ability to care for certain physical needs but more significant problems in Plaintiff's ability to care for his emotional and mental needs.  Ms. Ryan noted that Plaintiff experienced a "serious problem" with four of the ten key activities on the questionnaire: "handling frustration appropriately," "being patient when necessary," "responding appropriately to changes in own mood," and "using appropriate coping skills to meet daily demands of school environment."  Tr. 224.  Ms. Ryan noted that Plaintiff experienced an "obvious problem" with "identifying and appropriately asserting emotional needs" and "knowing when to ask for help."  *Id*.  Ms. Ryan did not complete the section indicating the frequency of Plaintiff's problems with any of the activities in which she noted some degree of difficulty.

With respect to this domain, the ALJ again cited evidence that Plaintiff's limitations were less than marked.  He noted that Plaintiff demonstrated normal thought content, denied experiencing suicidal ideation, and demonstrated normal insight and judgment more frequently than he demonstrated poor judgment.  Tr. 19; *see also id*. at 684, 688-89, 691, 726, 728, 730, 732, 734, 736, 738, 741, 743, 746, 748, 751, 753, 755 (Plaintiff's records from Provident Behavioral Health, which consistently noted that Plaintiff exhibited no risk of harm to himself or others and that he agreed to continue returning for sessions addressing emotional regulation).  Ms. Ryan also noted only slight difficulties with medication compliance and using good judgment to avoid danger, and she indicated that Plaintiff experienced no problems with personal hygiene and caring for physical needs such as dressing and eating.  Tr. 224.  The ALJ also found persuasive the prior administrative medical findings of Drs. Smith and Sullivan, who also found

less than marked limitations in this area.  Drs. Smith and Sullivan made note of records reflecting Plaintiff's normal mood; euthymic speech; normal life stressors; intact thinking; orientation to self, time, place and person; and improvements in cooperation and self-regulation.  They also noted that while Plaintiff did display certain indicators of limitations in this area, his symptoms of emotional dysregulation and refusal to cooperate and engage with schoolwork improved with medication.  Tr. 70-71, 77-78.  Ms. Ryan's commentary in this regard aligns, as she noted that Plaintiff was better able to regulate emotion and complete more schoolwork after taking medication.  Tr. 225.

Plaintiff's argument with respect to this domain does not provide grounds to reverse and remand.  As with the domain of interacting with others, the Court declines to impermissibly reweigh the evidence, as substantial evidence exists in the record to support the ALJ's conclusion that Plaintiff experienced less than marked limitations in this domain.

**CONCLUSION**

On balance, the Court finds that the ALJ's conclusions as to Plaintiff's level of limitation in each functional domain are supported by substantial evidence and were within the permissible zone of choice.

Accordingly,

**IT IS HEREBY ORDERED** that the decision of the Commissioner is **AFFIRMED**.  A separate Judgment shall accompany this Memorandum and Order.

Dated this 20th Day of March, 2026.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE

14